[No. 19624. Department One. February 3, 1926.]

THE STATE OF WASHINGTON, *Respondent*, v. JOE CARUSO
et al., *Appellants.*[1]

[1] BAIL (7)—DISCHARGE OF SURETIES—CUSTODY OF ACCUSED. A bail bond given in justice court is *functus officio* and discharged, upon the principal's being found guilty, sentenced, and committed into custody by the justice; and it cannot stand in lieu of the appeal bond, required by Rem. Comp. Stat., § 1919, on an appeal to the superior court.

[2] BAIL (7)—DISCHARGE—CONDITIONS—COMPLIANCE. A bail bond given in justice court, conditioned to appear and answer the charge against him "in whatever court it may be prosecuted," once discharged by appearance and complying with all its conditions, does not require a further appearance on an appeal to the superior court, in view of Rem. Comp. Stat., § 1919, requiring his commitment until a' new bond is given for his further appearance.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered November 19, 1924, in favor of the plaintiff, upon sustaining a demurrer to the answer, in an action on contract. Reversed.

*S. A. Gagliardi*, for appellants.

*J. W. Selden* and *D. D. Schneider*, for respondent.

HOLCOMB, J.—This action was brought by the prosecuting attorney of Pierce county, on behalf of the state, to recover upon a bail bond of $1,000, filed in the justice court of Tacoma, Pierce county, before E. J. Hackett, justice of the peace, on behalf of Caruso as principal, and Olivieri and Clemente as sureties. No service was made upon Clemente or upon Caruso, the principal. Service was made upon Olivieri.

The complaint of the state, in substance, alleges that on September 1, 1922, Caruso was tried by the justice

[1]Reported in 243 Pac. 14.

of the peace above named, found guilty of selling two
drinks of intoxicating liquor, and sentenced to pay a
fine of $200 and serve sixty days in the county jail,
and pay the costs; that he be committed to jail until
such fine was paid and such sentence served.

Paragraph 2 of the complaint alleges that Caruso
gave notice of appeal to the superior court from the
judgment and sentence of the justice court, which ap-
peal was dismissed by the superior court on October
1, 1922, and a bench warrant issued for the appre-
hension of the defendant.

Paragraph 3 alleged that, at the time of his arrest,
Caruso filed a bail bond, signed by appellant and
Clemente as sureties, for the sum of $1,000; that the
conditions of the bail bond were that Caruso should
appear and answer to the charge against him in what-
ever court it might be prosecuted, and at whatever
time it might be set for hearing by the court before
which it was pending; and that, if convicted, he would
appear for judgment and sentence and render himself
in execution thereof.

Paragraph 4 alleges that on January 23, 1924, the
superior court issued a bench warrant for the appre-
hension of Caruso; that on February 1, 1924, the sheriff
of Pierce county made return on the bench warrant
that he was unable to locate the defendant and that
his whereabouts were unknown.

Paragraph 5 alleges that the defendant failed to hold
himself amenable to the orders and processes of the
court, and failed to appear for judgment and sentence
and render himself in execution thereof.

Paragraph 6 alleges that on February 5, 1924, the
court entered an order declaring the bail bond for-
feited.

Paragraph 7 alleges that appellant and his co-surety
were residents of Pierce county; then followed a prayer

for judgment against appellant in the sum of $1,000 and costs.

After a motion to make more definite and certain paragraphs 1 and 3 of plaintiff's complaint had been denied by the court below, appellant filed his answer to the complaint. He admitted the allegations of paragraphs 1, 2, and 3 of the complaint, and alleged that the bail bond was given in justice court before E. J. Hackett, justice of the peace, etc. He denied paragraph 4, on information and belief; denied paragraph 5 of the complaint (which contained the allegation that Caruso failed to hold himself amenable to the orders and processes of the court, and appear for judgment and sentence and render himself in execution thereof) *in toto*. He admitted paragraph 6, except that he alleged that the bail bond was forfeited by the superior court *ex parte,* without notice to the defendants, and not on the date on which the case was set for trial.

For a further affirmative defense, appellant alleged: that on about July 6, 1922, a complaint was filed in the justice court above named, charging the defendant Caruso with the crime of having sold two drinks of intoxicating liquor in Tacoma, Pierce county, on July 3, 1922; that, upon filing the complaint, a warrant was issued and defendant Caruso arrested, and his bond fixed in the sum of $1,000 with surety, or $500 in cash. It was further alleged that, in order to obtain the temporary release of Caruso, a bail bond, setting forth a copy of the bond and designating the same as Exhibit "A," was duly signed and executed by Caruso as principal, and Clemente and appellant as his sureties, the condition of the bond being that Caruso would appear before the court in which he was charged, or in any other court that that court might send the case, and defend the charge against him, and, if convicted, would

appear for judgment and render himself in execution thereof. A further allegation was that, upon the filing of the bail bond and its approval by the justice of the peace, Caruso obtained his temporary liberty, and the case pending against him, for which the bond was given, was set for trial before the justice of the peace before whom the prosecution was pending, on September 1, 1922.

It was then alleged that, on September 21, 1922, the case against Caruso was duly called for trial, the defendant entered a plea of not guilty, the trial proceeded upon the complaint filed against him, and, at the conclusion thereof, Caruso was found guilty as charged, sentenced to pay a fine of $200 and serve 60 days in the county jail; that Caruso in open court gave notice of appeal to the superior court from that judgment and sentence, the justice of the peace fixed his appeal bond in the sum of $1,000, and committed Caruso into custody until such appeal bond was given; that Caruso remained in the custody of the court and rendered himself in execution of the judgment. It was then alleged that all of the conditions of the bail bond signed by appellant and the defendant were fulfilled and complied with, and that the principal on the bond was duly presented in the court in which the prosecution was instituted and maintained, stood trial as provided in the bond, and that he was committed into custody by the justice of the peace having jurisdiction thereof, in execution of the judgment and sentence imposed upon him; that, by reason thereof, the bail bond became null and void. Then followed the usual prayer for the dismissal of plaintiff's complaint, and for costs.

To this answer and affirmative defense of appellant, the state demurred, on the grounds that the answer and defense did not state facts sufficient to constitute an answer and affirmative defense; upon this demurrer

being presented to the court and sustained, the defendant refused to plead further, and the trial court entered judgment against appellant in the sum of the bond and costs.

It must be noted that the denials of the answer denied one of the very essential elements of the cause of action of respondent: the allegation that Caruso, the principal on the bail bond, failed to hold himself amenable to the orders and processes of the court in which the bail bond was given, and failed to appear for judgment and sentence and render himself in execution thereof.

The affirmative defense alleges the appearance of the principal in the justice court where the action was pending, and in which the bail bond was given; that he was tried, convicted and sentenced by the court, and committed into custody, until he gave the bond on appeal in the amount fixed by the court:

Section 1919, Rem. Comp. Stat., provides:

"Every person convicted before a justice of the peace of any offense may appeal from the judgment, within ten days thereafter to the superior court. The appeal shall be taken by orally giving notice thereof at the time the judgment is rendered, or by serving a written notice thereof upon the justice at any time after the judgment, and within the time allowed for taking the appeal; when the notice is given orally, the justice shall enter the same in his docket. The appellant shall be committed to the jail of the county until he shall recognize or give a bond to the state, in such reasonable sum with such sureties as said justice may require, with condition to appear at the court appealed to, and there prosecute his appeal, and to abide the sentence of the court thereon, if not revised by a higher court."

In compliance with the statute, the justice of the peace required a bond to be given upon the notice of appeal being given, and fixed the amount thereof. The allegation of the affirmative defense is that the justice committed the defendant into custody until such appeal

bond was given, and that Caruso remained in the custody of the court and rendered himself in execution of the court's sentence and judgment. As against demurrer, the foregoing allegations must be considered true, the allegations being admitted for the purpose of demurrer.

[1] The above being true, the bail bond was undoubtedly discharged. It became *functus officio* when the principal on the bond had been found guilty, sentenced and committed, and it could not stand in lieu of an appeal bond, required to be given by the statute and by the justice of the peace in compliance therewith. The provisions of the bail bond that Caruso should appear and answer the charge mentioned ''in whatever court it might be prosecuted and at whatever time it might be set for hearing by the court before which it was pending,'' means such court as the action was then being prosecuted in, or such court as it might be transferred to by the court having jurisdiction thereof, as by change of venue, or transfer by the justice to another justice, and not such court as the case might be transferred to on appeal from the judgment of the lower court. The rule is well stated in 3 R. C. L., p. 42, § 49, as follows:

''Under the conditions of the bond he, [the principal] of course, cannot absent himself during the progress of the trial or before conviction, but after conviction he is, when present, placed directly in control of the court, and while there may be no express order of the court directing the sheriff to take the prisoner into custody, there is under such circumstances always an implied order that the sheriff shall do so, and the defendant is therefore as legally in the custody of the sheriff as if the bail had delivered him.''

And, also, Ibid. p. 50, § 59:

''Where the accused has been produced for trial and has been actually taken into custody of the law, the

bail are discharged, and a vacation of the order directing that the accused be taken into custody cannot restore him to the custody of the bondsmen. After conviction it is customary to deliver up the accused to the custody of the law, and in some jurisdictions it is held to be the duty of the proper officer to take the accused into custody immediately after conviction, and therefore the liability of the bail ends with the return of the verdict of conviction, for the accused thereupon is presumed to be taken from their control into the custody of the law."

6 C. J. p. 1031, § 228, also states the rule to be:

"Where one is convicted and sentenced he is no longer in the custody of his bail but is under the custody of the proper officer of the law, and the sureties are entirely discharged by operation of law without any formal entry to that effect, for there has been a compliance with the conditions of the bond."

In *State v. Charles*, 207 Mo. 40, 105 S. W. 609, 13 A. & E. Annot. Cas. 565, where the condition of the bail bond required the principal to "appear and answer the information," and "not depart the court without leave," the bond was held not susceptible to the construction that it required the principal to abide the judgment and sentence of the court; and the appearance of the principal before the court and entering a plea of guilty of the offense charged in the information, thereby putting himself in the power and control of the court, satisfied the conditions of the bond and discharged the liability of the sureties. The bond in the case before us is probably somewhat more continuing in its terms than the one in that case, but it is not so continuing in its terms as to be capable of extension into an appeal bond from an inferior to a superior court under our statute. In the case above cited, the opinion quotes from Hawkins' treatise on Pleas of the Crown, stating the rule as to sureties, which some authorities

very properly designate as "Sergeant Hawkins' End of the Law." In stating the law as to the power and duty of sureties, the eminent author there said that:

" 'It must be confessed that if a man's bail, who are his jailors of his own choosing, do as effectually secure his appearance and put him as much under the power of the court as if he had been in the custody of the proper officer, they seem to have answered the end of the law, and to have done all that can be reasonably required of them.' "

In *Miller v. State,* 158 Ala. 73, 48 South. 360, 20 L. R. A. (N. S.) 861, the court held that, after the conviction of the accused for whose enlargement bail had been given, when he was present in court, and his passing into the custody of the sheriff, the court could not, without knowledge of the sureties upon granting him a new trial, permit him to go at large under the former bond. Here, again, we think the bond before us somewhat more comprehensive than the one in that case, but it was stated in that case that:

" 'Whenever a party is convicted and sentenced, he is no longer in the custody of his bail, but is in the custody of the proper officer of the law, and the bail are thereby discharged by the operation of law without a formal order to that effect.' "

And further:

" 'The mere appearance of the defendant at court for trial, or his presence during trial, or a mistrial, will not operate to discharge the bail. The obligation of a proper bail bond binds the sureties, at least, until after the verdict of the jury; but, when the sentence of the law is pronounced, the officer of the law is charged with its due execution. The bail have no further control over the custody of their principal, and cannot be longer held responsible. . . . The bail bond became *functus* by the trial and sentence.' "

It is there observed that:

"It is manifestly true that, if the defendant, after his conviction and before the granting of a new trial, had escaped from jail or the custody of the sheriff, no liability would have attached to the sureties on the bond."

That observation seems to fit the case at bar, for, while it is not alleged that the principal on the bond escaped, it is alleged that he was committed into custody by the justice of the peace, and that, when the case was brought up in the superior court to which an abortive attempt to appeal had been made, the principal did not appear, a bench warrant was issued for his arrest, and he could not be found. It is evident, therefore, that he must have escaped from someone.

[2] Respondent contends that, since the bond contained the conditions that Caruso "would appear and answer the charge against him in whatever court it may be prosecuted, and at whatever time it may be set by the court before which it was pending, and hold himself amenable at all times to the orders and processes of the court, and if convicted appear for judgment and render himself in execution thereof,"—there are three distinct conditions which the sureties upon the bond bound themselves to see performed by their principal: (1) to appear and answer the charge in whatever court it may be prosecuted, and at whatever time it may be set for hearing; (2) hold himself amenable to the orders and processes of the court; and (3) if convicted, appear for judgment and render himself in execution thereof; and that these are distinct and independent conditions. It is then asserted by respondent that Caruso failed to render himself in execution of the judgment entered by the court. That is not correct, according to the denials and the allegations of the affirmative defense, which were admitted by the demurrer. He did appear and answer the charge in the court, in which it was prosecuted, at the time it was set for hearing; he did hold

himself amenable to the orders and processes of the
court; he was convicted and appeared for judgment,
which was rendered against him, and he was commit-
ted into custody.

*State v. Schenck,* 138 N. C. 560, 49 S. E. 917, relied
upon by respondent, was based upon a construction of
a bail bond in that case, and the practice in that state,
which the court stated to be that—

"The conviction did not by virtue of its own force
put the defendant in the custody of the court or of the
sheriff. This is done, in our practice at least, by an
order from the court, given of its own motion, or on ap-
plication of the solicitor; and the court, when it passes
judgment upon a defendant and he appeals, can direct
that he be not taken into custody immediately, but be
permitted to find security for the costs of his appeal
and for his appearance at the next term, and, if he fails
afterwards to appear, when called during the term,
and perfect his appeal and give the necessary security
for his appearance, or in default thereof to surrender
himself in execution of the judgment, he may be called
and his forfeiture entered."

We have no such practice prevailing in this state.
Moreover, the appeal statute, under which the justice
of the peace acted, provides for a new bond, and for the
commitment of the principal until a new bond has been
given; and appellant had been so committed by the
court which had convicted him.

*State v. Hutchins,* 185 N. C. 694, 116 S. E. 740, an-
other North Carolina case, is no more in point.

*State v. Stewart,* 74 Iowa 336, 37 N. W. 400, was a
case where the principal did not respond to the judg-
ment of the court *on an appeal bond* given by him after
conviction in an inferior court. That case would have
been applicable, if the principal in this case had given
the appeal bond required by statute and by the justice
court and defaulted thereon.

*State v. Thompson,* 62 Ind. 367, was another case, where the principal in the bond failed to appear under his continuing obligation to answer the charge against him in the justice court, abide the order of the justice thereon, and not depart without leave. He appeared at one time, when the case was set for trial, and, the case being continued to an indefinite time of which notice was to be given, the principal failed and refused to appear at the time when notified by the justice, and the bail was held answerable for him.

We have said that:

"Bail bonds should be construed with reference to the laws of the sovereign jurisdiction where given. While the liability of the principal and sureties is to be measured by the terms of the bond, the obligors, especially the sureties, have the right to expect and insist that the prosecution observe the mandates of the statute." *State v. Lewis,* 35 Wash. 261, 77 Pac. 198.

We are satisfied that, under our statutes and the law generally, the denials and affirmative defense of appellant stated a good defense at law. .

The judgment is therefore reversed and remanded, with instructions to overrule the demurrer to the answer and affirmative defense, and for further proceedings in conformity herewith.

Tolman, C. J., Main, Mitchell, and Fullerton, JJ., concur.