[No. 25569-7-III.   Division Three.   November 29, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM JOSEPH KRAMER, *Defendant*, ALL CITY BAIL BONDS, *Appellant*.

*James L. Studt* (of *James L. Studt Law Office, PLLC*), for appellant.

*Ronald B. Shepherd*, *Prosecuting Attorney*, and *Melvin D. Hoit*, *Deputy*, for respondent.

¶1 BROWN, J. — All City Bail Bonds appeals a Lincoln County Superior Court order denying its motion to vacate a default judgment and exonerate William Kramer's $20,000 bail bond. All City contends forfeiture of the $20,000 bond is inequitable and punitive, constituting an abuse of discretion. Because the trial court gave tenable grounds for denying All City's motion to vacate the forfeiture, we affirm that decision. However, because the record is inadequate to explain the trial court's balancing in deciding to deny partial exoneration, we remand for further proceedings.

## FACTS

¶2 In June 2005, All City posted a $20,000 bail bond to secure Mr. Kramer's presence at all future court hearings. Mr. Kramer failed to appear in court for pretrial hearings on December 19, 2005. The court ordered bond forfeiture and issued a bench warrant. All City received a formal forfeiture notice from the court clerk on December 20. All City moved to vacate the forfeiture but did not ask for a

stay. Because All City declined the court's offer of an evidentiary hearing, we derive the facts from a scanty record consisting mainly of the declaration of All City's agent, Charles Stewart, the opposing memoranda submitted below, and the June 22, 2006 motion hearing record of proceedings.

¶3 Mr. Kramer contacted Mr. Stewart on December 19 and reported he had failed to appear because he could not find his attorney. The record is unclear about the attorney's presence. Mr. Stewart told Mr. Kramer he was in violation of a court order and encouraged Mr. Kramer to turn himself in to the authorities. Mr. Kramer apparently wished to remain with his family until after the Christmas holidays and reportedly agreed with Mr. Stewart to surrender to All City or law enforcement on December 26 or 27. At some point, All City received a call from Mr. Kramer's mother; Mr. Stewart told her not to lie to the police or hide Mr. Kramer if the police arrived. All City did not tell the police of its contacts with Mr. Kramer—nor did All City inform the court or police of Mr. Kramer's location or its agreement with Mr. Kramer. On December 26, police arrested Mr. Kramer at his mother's home without any input or assistance from All City.

¶4 On December 27, All City moved to exonerate the forfeiture but did not ask for a stay. At the June 2006 motion hearing, the court offered an evidentiary hearing; All City declined. Considering the law with Mr. Stewart's declaration, opposing memoranda, and argument, the court reasoned All City had failed to comply with contractual and statutory obligations and had no right or authority to decide for the court when Mr. Kramer should reappear. The court concluded All City had the duty to act immediately to bring Mr. Kramer in and All City's inaction caused the police response. All City agreed but contended it was inequitable to forfeit the entire bond. Instead, All City offered to pay reasonable apprehension expenses. The court denied All City's motion to vacate the forfeiture judgment and denied any exoneration. All City appealed.

## ANALYSIS

¶5 The issue is whether the trial court abused its discretion when denying All City's request to vacate the forfeiture and equitably exonerate the bail bond. All City contends the trial court incorrectly relied on contract principles in denying vacation and improperly balanced the equities to impose an unpermitted fine or penalty.

¶6 Bond forfeiture issues are reviewed for abuse of discretion. *State v. O'Day*, 36 Wn.2d 146, 159, 216 P.2d 732 (1950). Discretion is abused if it is exercised without tenable grounds or reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

¶7 Allowing bail bond release is encouraged. *O'Day*, 36 Wn.2d at 153. " 'The object of bail is to insure the attendance of the principal and his obedience to the orders and judgment of the court. There should be no suggestion of bounty or revenue to the state or of punishment to the surety.' " *Id.* (quoting *State v. Jackschitz*, 76 Wash. 253, 255, 136 P. 132 (1913)). If a defendant fails to appear at a promised hearing and a default is entered, the recognizance (bail bond) shall be declared forfeited by the court pursuant to RCW 10.19.090, subject to possible exoneration pursuant to RCW 10.19.140.

¶8 All City first contends the trial court improperly applied contract law to require it to secure Mr. Kramer's presence. The trial court indicated All City "failed to perform its contractual obligations to secure the defendant's appearance in court." Clerk's Papers at 30. The trial court, however, primarily focused on All City's failure to meet the requirements of RCW 10.19.140. The order and oral record shows the court's contract references merely encapsulate the law and policy underlying bail bonds: "that, in cases of flight, a recapture may be aided by the bondsmen who, it is presumed, will be moved by an incentive to prevent judgment." *Jackschitz*, 76 Wash. at 256. The court correctly noted an expectation that the surety will aid in recapturing fleeing criminal defendants.

¶9 Where, as here, a bail bond is forfeited pursuant to RCW 10.19.090, the forfeiture may be remitted to the surety where the "person is returned to custody or produced in court within twelve months from the forfeiture . . . *if the surety was directly responsible for producing the person in court or directly responsible for apprehension of the person by law enforcement.*" RCW 10.19.140 (emphasis added). The amount to be remitted to the surety is the "full amount of the bond, less any and all costs determined by the court to have been incurred by law enforcement in transporting, locating, apprehending, or processing the return of the person to the jurisdiction of the court." *Id.*

¶10 "[W]here the bonding company is diligent in returning the defendant to the court's jurisdiction, to forfeit the bail is an abuse of discretion." *State v. Hampton*, 107 Wn.2d 403, 408, 728 P.2d 1049 (1986) (citing *State v. Mullen*, 66 Wn.2d 255, 401 P.2d 991 (1965)). It is an abuse of discretion to deny the surety's motion to vacate bond forfeiture where the bondsman acted in good faith, was honest and persistent, at considerable expense endeavored to find the defendant, and ultimately produced the defendant in court so that the purpose of the bail bond was accomplished. *State v. Johnson*, 69 Wash. 612, 616, 126 P. 56 (1912); *see also O'Day*, 36 Wn.2d at 148-49, 159 (holding trial court erred by denying motion to vacate bond forfeiture where bondsman located defendant in Idaho and immediately returned him to Washington to surrender to law enforcement).

¶11 All City relies heavily on *Mullen*, where the defendant was produced in court by the county sheriff within 21 days of his missed sentencing after being apprehended by federal officers on a federal fugitive warrant with no apparent effort or assistance from the surety. *Mullen*, 66 Wn.2d at 258-59. The court held that requiring forfeiture would be inconsistent with the policy of encouraging bail and avoiding fines and punishments to sureties. *Id.* at 259. Accordingly, the surety's liability was limited to "the costs expended in apprehending and returning the defendant to the custody of the court, together with any costs which resulted

to the county and state by reason of the delay in the production of the defendant." *Id*. *Mullen* is distinguishable.

¶12 All City did not behave passively like the surety in *Mullen*. The court reasoned All City was not diligent in producing Mr. Kramer because All City intentionally withheld information and acted to aid Mr. Kramer's nonattendance and disobedience to court orders. *O'Day*, 36 Wn.2d at 153.

¶13 In the trial court's view, All City knew Mr. Kramer's location for seven-plus days while the police were looking for him. All City improperly withheld Mr. Kramer's location from the police authorities and the court. All City improperly encouraged Mr. Kramer's absence by agreeing with him that he did not need to return to custody until after the Christmas holidays. All City, by this agreement, improperly became complicit with Mr. Kramer in his absence by colluding with him to delay his return to the authorities. All City improperly assumed a judicial role by deciding when Mr. Kramer should return to court authority and when he should be obedient to court orders. Thus, unlike the surety in *Mullen*, All City went well beyond failing to act with diligence in producing Mr. Kramer, which makes this case unique. The facts in balance weigh heavily against All City.

¶14 All City candidly acknowledges it claims no "direct responsibility" for Mr. Kramer's ultimate surrender. All City, to its credit, accepts that it acted at risk by allowing Mr. Kramer to spend the holidays with his family. Nevertheless, All City argues equity should limit its responsibility to police out-of-pocket expenses. Using a contract analogy, All City argues the $20,000 bond forfeiture was excessive, thus punitive and prohibited. However, the court relied on statutory authority and case law principles before denying the motion to vacate the forfeiture judgment.

¶15 No set factors are presented for reviewing our unique facts. The question remains whether denying any exoneration is an abuse of discretion where a surety collaborates with its principal by withholding information about the principal to delay the principal's return to court. The egregious facts extend well beyond those found in

*Mullen* or any other case we have found. However, case law and the trial court's commentary suggest certain nonexclusive criteria will aid our review.

¶16 First, has the court found egregious facts suggesting a forfeiture level exceeding bare cost recovery, and if so, has the court balanced those facts with the equities: The responsibility acceptance, and the corrective measures suggested by the surety, if any? This is a fact-driven, case-by-case inquiry. The facts suggested All City's behavior was egregious to the trial court, and we agree, but the record contains no balancing.

¶17 Second, how do the police costs for recovering Mr. Kramer and the increased court and party costs due to disrupted and delayed proceedings balance with the goal of avoiding bounty or revenue collection in bail forfeiture situations? *O'Day*, 36 Wn.2d at 153. Although the court expressed concern for unnecessary police operations and delayed proceedings, no cost estimates are before us.

¶18 Third, how does the amount forfeited further the goals of ensuring defendant attendance and defendant obedience to court orders balance with the need to encourage bail release without imposing a fine or punishment? *Id.*; *Mullen*, 66 Wn.2d at 259. Again, our record is silent on this point.

¶19 Fourth, how does the selected remedy promote the court's traditional authority in setting release conditions balance with the local availability of bail services for criminal defendants for whom release is encouraged? *O'Day*, 36 Wn.2d at 153. We have no record of the availability of other local bail services or the ability of All City to absorb this loss. The trial court was mainly concerned with All City's encroachment into its exclusive decision-making authority, but other court impacts may be relevant as well.

¶20 Given all, we hold the court did not err in finding All City lacked direct responsibility for Mr. Kramer's apprehension under RCW 10.19.140. Further, because our facts differ markedly from those found in *Mullen*, and because All City

admits behavior that we agree is egregious, we affirm the court's decision to deny All City's motion to vacate the default judgment. Whether the court erred in denying any exoneration for All City remains an open question because we lack an adequate record for review. Thus, we remand for the trial court to develop a record of the exoneration facts for our review, if necessary.

¶21 In sum, the trial court gave tenable reasons to deny All City's motion to vacate the bond forfeiture and did not err. Therefore, we affirm that decision. We reverse the decision to deny any exoneration and remand to balance relevant facts and determine whether partial exoneration of the bond is appropriate. The trial court is vested with "sound discretion" in deciding "the matter of forfeiture, nonforfeiture or partial forfeiture" and we "will not interfere with the exercise of that discretion, unless it appears [from the record] that the court abused its discretion." *O'Day*, 36 Wn.2d at 159.

¶22 Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

SCHULTHEIS, A.C.J., and KULIK, J., concur.

Review granted at 163 Wn.2d 1052 (2008).